DECISION
In this civil action two governmental bodies of the Town of Lincoln cannot agree which of them has the power to select an architect and to describe the architectural work to be performed in the construction of additions to four public schools in the Town. On September 22, 1995 the plaintiffs, the School Committee and Superintendent of Schools of the Town of Lincoln filed their complaint against the Town Council, and its members individually, the Town Administrator, and the Town Finance Director, the latter two in their official capacities. They sought declarations that the actions of the defendants, which were undertaken without the participation and approval of the School Committee relating to certain school construction contracts, be invalidated; that an opinion of the Town Solicitor be nullified; that the School Committee's procedures for selection of an architect were in compliance with all pertinent legal requirements; that the award of a contract to a different architect by the Town Council be nullified; and that the defendants have unlawfully prevented the School Committee from carrying out its statutory obligations. They also asked that the defendants be enjoined from issuing further Invitations to Bid or Requests for Proposals relating to the projects without express prior approval and participation of the School Committee; that the defendants be enjoined from entering into any contracts relating to those projects without such prior express approval and participation; and that the defendants be ordered to enter into a contract with the architect selected by the School Committee for the architectural services requested by the School Committee. The Court entered an ex parte temporary restraining order against further proceedings by the defendants with respect to contracting for architectural, engineering or consulting services regarding the project and against publishing further Invitations to Bid or Requests for Proposals relating to the project pending hearing on October 5, 1995 on the plaintiffs' application for a preliminary injunction. On October 5, 1995 the temporary restraining order was continued in full force and effect until the matter could be heard on memoranda, to be filed on or before October 16, 1995, with oral arguments on October 20, 1995.
On October 6, 1995 the defendants filed their Answer and Counterclaim for Declaratory Judgment. The defendants sought a judgment of this Court declaring that the Town Council's award of the architectural contract is valid; that all other contracts required to carry out the projects must be made by the Town Council and with the involvement of the Town Finance Director; and that the vote of the School Committee on August 9, 1995 requesting the award of an architectural contract was of no legal force and effect.
On October 16, 1995 the plaintiffs filed and served their motion for summary judgment pursuant to Rule 56, R.Civ.P, together with an attached affidavit, a statement of undisputed material facts, and a legal memorandum of law. The defendants likewise filed and served their memorandum of law and attached exhibits on October 16, 1995. The parties agreed to advance and consolidate hearing on the merits and on the plaintiffs' motion for summary judgment with the hearing on preliminary injunction on October 20, 1995. The Court heard extended oral argument on October 20 and 23, 1995.
The Court finds that the facts which underlie this dispute may be summarized as follows.
On May 16, 1995, Public Laws 1995, Chapter 95-031 (hereinafter "the Act") was enacted into law. That Act authorized the Town of Lincoln to issue bonds in the amount of $10,482,000, the proceeds of the sale of which were required by Section 2 of the Act to be expended on construction, renovation, furnishing and equipping of additions to four public schools in the Town and for certain "ancillary costs," which included "fees for planning, design and architects and engineers fees, survey fees," as well as other costs not material to this dispute. Section 2 went on to provide specifically:
 "The projects shall be carried out and all contracts made therefor on behalf of the town by the town council or as may be otherwise directed by the town council. Notwithstanding any other law, regulation or policy to the contrary, the provisions of Section 7-5 of the town charter shall apply to such contracts." (Emphasis supplied.)
Although the Act frequently and variously refers to the Town's Finance Director, Administrator, Council and Council President, it makes no mention of the School Committee or any other agency or official charged with any responsibility, other than fiscal, for public education in the Town. The material sections of the Act were duly submitted for approval to the electors of the Town, who gave such approval at a special election on June 6, 1995.
The Town School Department had begun planning and preparing for the project well before the Act was proposed, enacted and approved. The approval of the State Board of Regents for Elementary and Secondary Education for a construction project was obtained on March 17, 1994 as a pre-condition to obtaining reimbursement of part of the construction costs from the State Department of Education. After a series of public meetings with Town officials held by the School Department during the 1994-1995 school years, the construction plan was modified and approved by the State Department of Education on March 22, 1995.
On April 4, 1995 the Town Council adopted a resolution sending the School Committee's request for $10,482,000 for school facilities bonding to the General Assembly for enabling legislation for the June 6, 1995 Town election. Thereupon, Chapter 95-023 of the Public Laws of 1995 was duly enacted on May 3, 1995. That Act which also contained the language pertinent to this lawsuit in its Section 2, was repealed in its entirety on May 16, 1995, when the Act pertinent to this action was enacted.
Thereupon, on May 15, 1995 the School Committee voted to advertise a call for proposals for professional architectural, engineering and consulting services, which was carried out by the School Department on May 28, 1995. The School Department received proposals from eight architectural and engineering firms, which were opened in public on June 21, 1995. After a preliminary screening by a search committee, the School Committee voted on August 9, 1995 to recommend to the Town Council the selection of one of those firms as the architect for the project. the [The] School Committee adopted what it calls a "construction management" form of architectural services, which it considered to afford the greatest degree of control over the design and cost of construction by the Town. The School Committee expressly rejected what is described as a "design/build" approach to such services.
In the meantime, the rift in the Town government, which results in this lawsuit, began to open. Responding to correspondence from counsel for the School Committee, the Town Solicitor on July 26, 1995 pointed to the express language of Section 2 of the Act, already quoted in this Decision. His letter implied that the Town Council would exercise the final decision in granting contracts and carrying out the projects. He assured the School Committee that its role in the process would not be unsubstantial and that the Town administration's supervision of the projects would not intrude on the Committee's "traditional" educational policy-making prerogatives. Promptly thereafter, on July 28, 1995, the Finance Director advertised for bids for architectural and professional services for "design/build" specifications for the bond projects. As part of the bid solicitation, the Finance Director included the floor plans and site plans already prepared for the School Committee, presumably for submission to the State Department of Education in March 1995. In the request for proposals the Finance Director did stipulate in the scope of work that the successful bidder would be required to "meet with those involved in the `Lincoln School System'; including teachers, staff, administration and parents;" significantly omitting any mention of the School Committee. The same scope of the work provisions of the bid require that the plans to be produced by the successful bidder should meet the requirements of "the Lincoln School System," again not specifically referring to the School Committee.
The rift widened into Grand Canyon proportions at the August 15, 1995 Town Council meeting. On August 11, 1995 the Town Solicitor filed a formal opinion in which he concluded that pursuant to the Act, and appropriate Charter provisions, as well as ordinances and statutes regulating purchasing in the Town, only the Finance Director, and not the School Committee, was charged with performing the contractual bidding functions for the projects and associated service contracts. He concluded that the School Committee's recommendation could be rejected because it had failed to follow lawful procedures. He approved the procedure followed by the Finance Director. Understandably, the Town Council declined to accept the architect proposed by the School Committee. Earlier that day the Finance Director publicly opened the fourteen bids she had received and forwarded those bids to the Purchasing Committee of the Town Council. The plaintiffs contend that it was the Town Council at its August 15, 1995 meeting which referred the bids to its purchasing subcommittee. Section 2-133 of the Code of Ordinances of the Town of Lincoln requires that all bids received by the Finance Director, after having been opened and tabulated, must be automatically referred to the Purchasing Committee. On August 18, 1995 the Purchasing Committee approved the bid of an architectural firm other than the one recommended by the School Committee.
On August 22, 1995 at a meeting specially called for the purpose of considering the report of the Purchasing Committee, the report was unanimously approved by the Town Council. On a three-to-two vote the council passed a motion to award a contract to produce a plan to solicit design/build bids, according to the terms of the July 28, 1995, advertisement, to the architectural firm selected by the Finance Director and recommended by the Purchasing Committee as the lowest responsible bidder. The contract award was conditioned by the motion on the bidder's meeting with the School Committee and other parties of interest, including teachers, staff and parents at meetings called by the School Committee, all references to the "Lincoln School System" having been discarded. The award was also conditioned on the bidder's receiving approval from the School Committee on its plan prior to the solicitation of the design/build plans. Finally, the award was further conditioned on the council's obtaining confirmation in writing from the State Department of Education that the procedure followed by the council would not jeopardize the Town's entitlement to State reimbursement.
On September 7, 1995 the School Committee, through its counsel, rejected any and all work to be performed pursuant to the Town's award of a bid for architectural/design services. The committee contended that such a rejection insured that one of the conditions of the award could not be met. The defendants have presented to the court an unsigned document captioned: Terms and Conditions of Agreement between the Town of Lincoln and [the successful bidder], dated September 19, 1995, which the defendants asserted during oral argument to be the contract which was to be entered into between the Town and the successful bidder. Correspondence from officials of the State Department of education indicates that the Town may not have offered the committee sufficient supervision over the project to insure reimbursement of a portion of the costs by the State.
The question presented for decision in this case is who will control the construction of these additions to the public schools: the School Committee or the Town Council.
THE POSITIONS OF THE PARTIES
The Town Council argues that the General Assembly has definitively answered that question with the approval of the electors of the Town. The Act plainly and unambiguously vests the exclusive power to make contracts to carry out the projects in the Town Council. The Act contains no reference whatever to the School Committee. On August 22, 1995 the Town Council exercised that statutory power. According to that argument nothing is left to adjudicate, because there is no need to look any further.
Furthermore, they contend, the Act prescribes that the Town must follow the provisions of Section 7-5 of its Charter in awarding contracts for the project. In pertinent part that section provides:
 "The Director of Finance shall:
 * * * *
 (12) Perform the work of buying for the Town pursuant to rules and regulations established by ordinance according to which he, or an officer appointed or designated by him, shall purchase or contract for all supplies, materials and equipment required by any department, office or agency of the town, including the School Department and the Water Department;
 * * * *
 Whenever any department, office or agency of the town shall purchase or contract for any supplies, materials, equipment or contractual services, independently and contrary to the provisions of this charter or the rules and regulations made thereunder, such order or contract shall be voidable by the town."
The defendants have called the Court's attention to Sections 2-131 through 2-135 of Article V, entitled: Purchasing, of its Code of Ordinances. These sections generally require that contracts for services in the amounts here involved, except for professional services, must be purchased by formal written contract from the lowest responsible bidder after due notice inviting proposals. The ordinance prescribes the manner in which the Finance Director is to invite bids, open them and tabulate them. It then requires that opened and tabulated bids are to be "examined" by the Purchasing Committee, which is to report its "findings to the full council, after meeting with the head of the department requesting the purchase." The council may reject all bids "when the public interest will be best served thereby," in which case the Finance Director may re-advertise for bids or "go onto the open market." Otherwise, contracts must be awarded by the council to the lowest responsible bidder. In determining the lowest responsible bidder the council may consider factors other than price.
The School Committee concedes as it must that the power to contract for architectural services is exclusively vested in the Town Council. They urge, nonetheless, that the council's exercise of that power is purely ministerial and that the power to select an architect and to prescribe the nature of the services to be performed by the architect belongs entirely to them. They argue that the Finance Director's charge in Section 7-5 of the Charter is also purely ministerial. They claim that the design of school is so closely interwoven with their educational function that only they can properly control that design pursuant to their general statutory power to control public education in the Town. They also assert that the Finance Director and the council's discretionary power with regard to these contracts is exhausted once they determine that funds are available to pay the contract sums.
COMPETITIVE BIDDING
The duties and powers of the Finance Director and the council, as set out in Section 7-5 of the Charter and Sections 2-131 through 2-135 of Article V of the Code of Ordinances, are plainly more than ministerial and involve the exercise of independent judgment and discretion. It is difficult to discern what provision of Charter Section 7-5 the General Assembly intended to apply to the contracts to be awarded on the project. The defendants claim subsection (12) applies, but that subsection applies to "contract(s) for all supplies, materials and equipment" required by Town departments. An architectural contract is scarcely a contract for supplies, materials or equipment as those words are generally used in the English language. Obviously, only the last paragraph proscribing independent contracting by Town departments, such as the School Department, contrary to the provisions of the Charter or the rules and regulations made thereunder does specifically refer to contracts for "contractual services," which plainly includes contracts for architectural services.
It would be rank speculation, however logical, to assert that the General Assembly might have meant to refer to Section 7-6, thereby mandating competitive bidding where appropriate under local rules and regulations. In any event a reasonable trail can be followed from the Act through the Charter to the Purchasing Ordinance, if all the General Assembly intended was to require adherence to the Town's Purchasing Ordinance.
The defendants take the position that, even if they wanted to, they could not award the contract requested by the School Committee because the award would not comply with the Purchasing Ordinance as required by the Act. Since the Finance Director and the council conformed to the Purchasing Ordinance, they contend that the council was fully empowered to award the contract to the lowest responsible bidder.
The School Committee argues that, even if the Purchasing Ordinance applies, competitive bidding was not required under Section 2-132 (a), because contracts for "professional services" are excepted from competitive bidding. If competitive bidding is not required the Finance Director has no role to play in the awarding of this contract so far as the record in this case discloses. The School Committee contends that the words "professional services" must be accorded their ordinary and usual meaning. They point to G.L. 1956 (1992 Reenactment) §7-5.1-2 (1)(F) and G.L. 1956 (1987 Reenactment) § 5-1-2 (a), in which the General Assembly declared the practice of architecture to be a "profession." The Town Solicitor in his formal opinion concluded that expression "professional services" must be limited to services rendered by the professionals mentioned in § 45-55-14 as exempt from the provisions of Chapter 55 entitled, "Award of Municipal Contracts," of Title 45 of the General Laws. Those professionals are attorneys, physicians and dentists. He reasoned that such a limitation was necessary to conform the Town's Purchasing Ordinance to the statute of general application to contracting by all municipalities in the State.
Clearly, if the Town is authorized to award architectural contracts by other than competitive bidding that authority must be derived from some source, and Chapter 55 is the only such source apparent to the Court. None of the methods of awarding contracts mentioned in § 45-55-2, other than competitive bidding seem to be available to the Town in this case. In any event, all of them involve the Finance Director and rules and regulations, which are not shown to exist in the record of this case.
The School Committee argues that the contract could properly have been awarded by the process of competitive negotiation in which it engaged prior to August 9, 1995. The committee, however, points to no rule or regulation of the Town which expressly permits such an award. None of the provisions of § 45-55-6, which permits competitive negotiation, applies to this case. The Town Purchasing Agent has not made a determination under appropriate local regulations that competitive sealed bidding is not practicable under § 45-55-6 (1). The purchasing agent, not the School Committee. Nor has the Town Purchasing Agent determined in writing that the bid prices received by competitive bidding either are unreasonable or were not reached independently in open competition under § 45-55-6 (3). The purchasing agent, not the School Committee.
Since the choice is between the completely ad hoc procedure followed by the School Committee, authorized neither by statute nor by ordinance, and the procedure followed by the Finance Director and the Purchasing Committee in strict compliance with both the statute and the ordinance, the council cannot be faulted for taking the Solicitor's advice and rejecting the committee's request and approving the Purchasing Committee's recommendation on the basis of the method of making the award. Whether or not the Solicitor was correct that the council was required to accept only the award based on competitive bidding, the council was justified in exercising its discretion to require competitive bidding. While this Court may not agree with the council's decision, as may be inferred from its Decision in Peter HajianAssociates v. Town of Cumberland Board of Library Trustees, C.A. No. PC-95-2572, June 12, 1995, it does not follow that the council is thereby forbidden by law from choosing to accept competitive bidding and rejecting competitive negotiation as the method for awarding the architectural contract. Put another way, even if architectural services are "professional services," and thereby excepted from competitive bidding under Section 7-5 of the Charter, and the ordinances adopted thereunder, the council nonetheless has as much discretion as it needs under Section 2 of the Act to decide how it wishes to award this architectural contract.
Under the circumstances the council was justified in refusing in its discretion to accept the committee's request to award the architectural contract to the architect the committee selected on the ground that such a selection was not the result of competitive public written bidding, as described in the Code of Ordinances.
THE SUBSTANCE OF THE AWARD
The question of whether or not the council correctly accepted the report of the Purchasing Committee is not so easily answered. There is no doubt that the council was justified in approving theprocedure followed by the Finance Director and the Purchasing Committee in determining the lowest responsible bidder. The issue is whether the committee had any power to determine what
architectural services were to be requested and whether it had any power to decide which architect satisfied the peculiar requirements of these construction projects.
On this question the parties are on opposite sides of a policy chasm. The council argues that its contracting power is plenary under the Act and precludes the intervention and participation of the School Committee except in a consultative role. The School Committee argues that these construction projects are part of its well-established powers and duty regarding public education in the Town. The question is not readily resolved. It is a special and local dispute, but it is part of a broader controversy between the administrators of the public fisc and the administrators of public education.
The committee points to its clear power to locate school buildings, § 16-2-15, and its power to exercise the entire
care, control and management of all public school interests in the Town, § 16-2-9.
The committee cites a line of Supreme Court decisions culminating in the observation in Town of Scituate v. ScituateTeachers Association, 110 R.I. 679, 681, 296 A.2d 466 (1972), that under our law the expenditure of appropriated funds is within the School Committee's sole and exclusive jurisdiction. The committee argues that the authority of Town purchasing agencies with respect to spending requests from the School Committee is limited to determining whether sufficient funds have been appropriated for the requested expenditure. Warwick SchoolCommittee v. Gibbons, 410 A.2d 1354 (R.I. 1980). To buttress its argument that the function of the Finance Director in soliciting bid, or proposals is purely ministerial with respect to the committee it points to Section 12-5 (6) of the Charter, which requires that the "Finance Department" of the Town assume the purchasing function of the committee, but according to the committee's requisitions. Like Section 7-5 (12), this Section, too, is limited to purchases of supplies and equipment and does not expressly refer to architectural or construction contracts.
The council points out that the School Committee has already chosen the locations of these additions to existing public schools, and that it does not propose to interfere in any way with the committee's statutory powers once the additions are constructed. They further point to the fact the they have ordered that all plans and construction must be approved by the School Committee. They also argue that the cases cited by the committee which delineate a clear separation of power between municipal appropriating bodies and School Committees do not apply where contracting power, as here, is unequivocally vested in the council by the General Assembly.
The council and the Finance Director point to more recent holdings of our Supreme Court, such as Greenhalgh v. CranstonCity Council, 603 A.2d 1090 (R.I. 1992), Coventry SchoolCommittee v. Richtarik, 122 R.I. 707 (1980), Warwick SchoolCommittee v. Gibbons, 122 R.I. 670 (1980), and for the proposition that School Committees do not enjoy such plenary powers as they once might have with respect to financial matters.Greenhalgh dealt with the question of whether the School Committee or the City Council was empowered to opt city employees in the school department out of an early retirement program enacted by the State. Since the enactment authorized the council and not the committee to make the election, the statute was held to be an exercise by the General Assembly of its power to apportion authority over public school interests. Gibbons held that a municipal purchasing agent could require a superintendent of schools to certify, like any other municipal department head, that either there was a sufficient unencumbered balance in the committee's budget to cover its requested purchase or that it would provide information from which the municipal purchasing agent could make her own determination. The holding was based on a legislative Charter which expressly required such certification from the head of the requisitioning department. In Richtarik the Court held that a School Committee's statutory power to discharge the State's constitutional responsibility for public education was limited by a Home Rule Charter provision, validated by the General Assembly, which made the Town Solicitor the exclusive legal advisor to all Town departments. The General Assembly's plenary and exclusive power to promote and regulate as well as allocate public resources to public education can no longer be questioned. City of Pawtucket v. Sundlun, 662 A.2d 40, 63 (R.I. 1995).
It seems clear that the General Assembly intended to vest unlimited jurisdiction in the Town Council to carry out and enter into contracts for this project. The committee argues that that delegation must be construed as embodying its traditional general statutory powers as a limitation on that power. The clear and unambiguous statutory language permits no such construction. If the General Assembly had intended to grant the council, only the formal and purely ministerial power of executing contracts already agreed by the committee, it chose a strange way to do that. The Court concludes that the General Assembly did not intend that the committee would control the substance of the contracts, while the council would be limited to procedures and formalities, since the Act makes no mention whatever of the committee in any role.
It is not for the judiciary to overrule the policy decisions made by the General Assembly regarding the funding of school construction, especially where those decisions have been approved by the electors of the Town. It is inferable that the electors approved the borrowing in this matter in some part because control of the spending of the borrowed funds was vested in the council and not the committee. A layperson studying the ballot question in depth, hypothetically of course, by reading the copy of the Act publicized in the office of the Town clerk would have assumed that the plain language of the Act excluded the committee by omission from any control over the spending of the borrowed funds. Such a layperson might not be expected to understand that a well-established tradition of control by School Committees over the expenditure of appropriated and budgeted funds was to be applied to the expenditure of these funds.
The council, itself, has shown some misgiving of the wisdom of the exercise of the plenary power vested in it with respect to carrying out and contracting for the projects for which the bonds were authorized. It approved the selection of an architect over the committee's objection by the slimmest margin. Its approval was qualified and conditioned on the approval by the committee of the architect's product.
The decision of the committee to reject the plans of the architect chosen by the council without considering those plans is, of course, within the discretion of the committee. Whether that decision serves the best interests of public education in the Town is not for the Court to say. The decision by the committee to jeopardize the Town's opportunity to obtain reimbursement for some of the construction and other costs of the project is also not for the Court to question. This Court will not presume to lecture the duly elected School Committee as to it; responsibility to the Town. It, and not this Court, has been elected by the electors of the Town to face these difficult choices.
Accordingly a judgment will be entered as follows:
1. The plaintiffs' complaint for declaratory judgment and injunctive relief will be denied and dismissed.
2. The temporary restraining order heretofore entered will be vacated.
3. The Town Council's award of the architectural contract to Garofalo Associates is declared to be a valid award.
4. Any and all further contracts required to carry out the projects described in Public Law 95-031, as approved by the electors of the Town, shall be made and entered into by the Town Council, or as otherwise permitted by such Act, with the Finance Director involved pursuant to the Town Charter and purchasing ordinances adopted thereunder.
5. The vote of the School Committee on August 9, 1995 regarding a design contract with Robert Haig Associates does not bind the Town Council in its award of an architectural contract. That vote of the School Committee shall be deemed, and must be considered by the Town Council to have been in the best interests of public education in the Town.
6. The Court urges, without so ordering, that future meetings between the Purchasing Committee and the School Committee, as required by Section 2-133 (1) of Article V of the Code of Ordinances, with regard to further awards of contracts be open, formal, public and recorded, and that the report, if any, of the Purchasing Committee to the full council ought to address the manner in which concerns, if any, of the School Committee have been addressed.
7. The Court also urges, without so ordering, that the School Committee reconsider any decision which may obstruct the taxpayers of the Town from obtaining state-financed assistance in the cost of these projects.