DECISION
This matter is before the Court on plaintiff Eddy Carvalho's (Carvalho) Motion for Declaratory and Injunctive Relief and Motion for Mandamus. The subject matter is consolidated with the Town of Lincoln's appeal (C.A. No. 01-1136) from its own Zoning Board of Review, sitting in its capacity as the Planning Board of Appeal. Jurisdiction is pursuant to G.L. 1956 §§ 9-30-1 et. seq. and 45-23-71.
 Facts/Travel
On or about April 4, 1995, Carvalho submitted a pre-application request to the Lincoln Planning Board for a proposed 22 lot residential subdivision to be called "Forest Park Estates." The subject real estate is comprised of approximately 36 acres and is located on Breakneck Hill Road; is shown as Lot 15 on Assessor's Plat 25; and is in an RS-20 Zoning District (Residential with minimum lot area of 20,000 square feet). After a pre-application meeting with the Planning Board, Carvalho's conceptual design was pre-approved in May 1995.
Prior to Carvalho's submission of his Master Plan to the Planning Board, the Town of Lincoln adopted new Planning and Subdivision Regulations which became effective December 28, 1995. Carvalho originally had secured pre-application approval under then existing regulations adopted in December 1986. One of the more significant changes to the regulations prohibits the developer from posting a bond prior to recording the plat (August 23, 2000 Planning Board Notes). Under these new regulations, the plat cannot be recorded until roads are constructed in the development, and the infrastructure is in place. In contrast, the 1986 regulations permitted the developer to post bonds, record the plat, sell lots, and generally proceed with the project (August 23, 2000 Planning Board Notes at p. 2). Additionally, the 1995 regulations increase the permitted length of the road in the plat from 600 linear feet to 720 linear feet. However, Carvalho's original plan called for 2500 linear feet (October 25, 2000, Planning Board Notes).
In June 1996, Carvalho submitted the Master Plan for the proposed subdivision to the Planning Board. In September 1996, the Board rejected this plan due, in part, to the length of the proposed road in the subdivision. Carvalho petitioned the Planning Board for reconsideration of its decision. In March 1997, the Planning Board denied Carvalho's petition.
Subsequently, Carvalho appealed the Planning Board's decision to the Lincoln Zoning Board of Review sitting as its Planning Board of Appeal, pursuant to G.L. § 45-23-67 and the Lincoln Town Charter, Section 15-6 (8). After hearing, the Zoning Board reversed the decision of the Planning Board and determined that the December 1986 regulations apply to Carvalho's application. The Zoning Board remanded the matter to the Planning Board for further proceedings.
Thereafter, the Planning Board resumed its consideration of Carvalho's subdivision application in accordance with the pre-application approval and in accordance with the 1986 regulations. By letter dated April 7, 1998 to the Planning Board, the Lincoln Director of Public Works recommended against approval of the project based upon his review of the sewer construction plans. His primary concern was overburdening the pump station located at Butterfly Way with additional flow from the Forest Park development proposal.
Carvalho appeared before the Planning Board again on April 22, 1998.[1]
The Board noted that "[t]here are three major issues [with respect to this application]: sewer system, open space, and review of storm drainage . . . that need to be resolved prior to a public hearing." (Capsule Summary of 4/22/98 Meeting.) Additionally, the Board passed a motion to "modify [the] plan to include 5% of $70,000. minimum or sale price as dedication in lieu of land, and providing Mr. Schultz and developer can agree to conventional pump station vs. [sic] grinder pumps, and storm drainage is reviewed and acceptable, then move to public hearing." (Capsule Summary of 4/22/98 Meeting.) The parties dispute whether the Planning Board granted preliminary approval for the Forest Park subdivision subject to the three issues, or whether the Board withheld any action until these three issues were resolved.[2]
Carvalho initiated no further action in advancing the Forest Park subdivision proposal. He maintains that according to Article B "Preliminary Plat," Section 2 (a) of the Town of Lincoln's Subdivision Ordinance of 1986, the Planning Board was obligated to return to him a copy of his Subdivision Plan with its statement of approval subject to any conditions and modifications within forty-five days after approval.[3]
However, the Town's Assistant Engineer subsequently testified before the Board that "[f]or 14 years I have been here, [and] we have never sent a signed copy of a set of plan to any issues." (Tr. 6/28/00 at 15.)
In 1998, Carvalho, as the owner of the subject property, together with a development firm, Newton Group L.L.C., filed an applicant seeking an amendment to the Town's Zoning Ordinance and Zoning Map in order to construct an "assisted living facility" at the site.[4] By letter dated December 28, 1998, the Planning Board recommended approval of the zone change to the Town Council. On April 20, 1999, the Town Council held a hearing on the rezoning application and unanimously denied the requested zoning amendment. The parties did not choose to appeal this vote and decision.
Carvalho waited approximately fourteen months before taking any further action in pursuit of developing the property as a residential subdivision. On June 28, 2000, he appeared before the Planning Board to discuss the status of the subdivision and whether the regulations that were enacted on December 28, 1995 would now apply or whether the project would continue to fall under the previous 1986 regulations. Due to the convoluted history of the application, the Planning Board referred the matter to the Lincoln Town Solicitor's office for its opinion on the current status of the project.
In his August 21, 2000 opinion, the Assistant Town Solicitor determined that the "status of [Carvalho's] pending application [is] moot" because "appearing in front of the [P]lanning [B]oard, personally or through the co-petitioner, Newton Group, LLC, and presenting the [assisted living facility] matter to the town council was tantamount to a formal withdrawal of the earlier [Forest Park Subdivision] project." (Opinion of Ass't Town Solicitor pp. 2, 3.) Although the Town Solicitor opined that the application for the project was withdrawn, he stated that "if [the Planning Board] finds that requiring [Carvalho] to re-file [sic] and proceed under the `New Regulations' [1995] would constitute `significant economic hardship,'" then "the Planning Board under Article C Section 2 b of the Subdivision Regulations has the discretion to proceed under the `Old Regulations' [1986]." (Opinion of Ass't Town Solicitor p. 3.) However, the Town Solicitor stated that the economic hardship issue may only be determined "after hearing on that limited issue." (Emphasis supplied.) (Opinion of Ass't Town Solicitor p. 3.)
On August 23, 2000, Carvalho appeared before the Planning Board to discuss whether the project would be allowed to continue under the 1986 regulations or if the 1995 regulations would govern. The Board directed Carvalho to return before it with evidence demonstrating the economic hardship he would incur if the project fell under the 1995 regulations.
Carvalho returned before the Planning Board on September 27, 2000 with the aforesaid evidence. He presented a list of costs already incurred in engineering fees, permit fees, and legal fees, totaling in excess of $50,000. The Planning Board voiced concern with the sewer system plan and were not in agreement with the project engineers. Additionally, the Board expressed concern with the lengthof the roadway in the subdivision and requested further information on these issues at the next meeting. The Board also concluded that the economic hardship issue needed to be addressed further at the next hearing.
The Planning Board convened again on October 25, 2000 to determine the difference in cost to Carvalho if his project fell under the 1995 regulations. He submitted an itemized list of the costs to be incurred in utilizing the 1995 regulations versus the 1986 regulations.[5] The increase in cost was determined to be approximately $140,000.00 to Carvalho. Carvalho also indicated that an additional cost of $520,000.00 would be required to comply with the Planning Board's position that the plat tie into the sewer system located at Great Road rather than at Butterfly Estates. Additionally, the Board advised Carvalho that the road length is too long and needs to be reworked.
On November 14, 2000, Carvalho filed an appeal from the Planning Board to the Lincoln Zoning Board sitting as the Lincoln Planning Board of Appeals.[6] On that same day, Carvalho filed the instant complaint under the Declaratory Judgment Act, G.L. § 9-30-1 et seq. (C.A. No. 00-5899.) The issue before the Planning Board on January 24, 2001, was whether Carvalho's subdivision should be permitted to proceed under the old regulations. The Board unanimously denied allowing the development to proceed under the 1986 regulations and determined that any consideration to develop the lot would be governed under the current regulations. The Board's decision was based on its finding that Carvalho abandoned the original project when pursuing alternative development plans. The Board determined that by waiting the amount of time that he did, Carvalho risked jurisdiction under the current regulations and that he did not incur sufficient economic hardship for a project of this size to justify jurisdiction under the previous regulations. (Tr. 1/24/01 pp. 12, 13.)
On February 6, 2001, the Lincoln Zoning Board sitting as the Lincoln Planning Board of Appeals reversed the January 24, 2001, Decision of the Planning Board. The Zoning Board determined that the findings of the Planning Board were not supported by the weight of the evidence and were prejudicial to Carvalho. Specifically, the Zoning Board determined that Carvalho did not have the requisite intent to abandon the application for the subdivision project and should therefore be allowed to move the project forward under the old regulations. (Lincoln Zoning Board Tr. 2/6/01 at p. 62.) Based on this finding, the Board found the economic hardship question to be inapplicable. This Decision was duly recorded in the Town Clerk's Office on February 16, 2001.
On March 8, 2001, the Lincoln Town Solicitor, in the name of the Town, filed the instant appeal seeking reversal of the February 6, 2001 Decision of the Lincoln Zoning Board. (C.A. No. 01-1136.) On April 5, 2001, this Court granted Carvalho's Motion to Consolidate his complaint with the Town's appeal. A hearing was held on the merits on May 3, 2001.
 Standard of Review
Under the Uniform Declaratory Judgment Act, this Court has "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. § 9-30-1. This Court may also grant further affirmative relief based on a declaratory judgment "whenever necessary or proper" provided subsequent "supplementary proceedings" are brought pursuant thereto. G.L. §§ 9-30-8 and 9-30-12. However, the decision to grant or to deny declaratory relief under the Uniform Declaratory Judgment Act is purely discretionary. Sullivan v. Chaffee, 703 A.2d 748 (R.I. 1997).
Appeals to the Superior Court for review of Zoning Boards' decisions with respect to the subdivision of land are brought under G.L. §45-23-71. That statute provides:
 "(a) An aggrieved party may appeal a decision of the board of appeal, to the superior court for the county in which the municipality is situated by filing a complaint stating the reasons of appeal within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk. . . .
 (b) The review shall be conducted by the superior court without a jury. The court shall consider the record of the hearing before the planning board and, if it appear to the court that additional evidence is necessary for the proper disposition of the matter, it may allow any party to the appeal to present evidence in open court, which evidence, along with the report, shall constitute the record upon which the determination of the court shall be made.
 (c) The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court does not review board decisions de novo and does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact. See Munroe v. Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999). Rather, Superior Court review is "confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law." Id. (quoting Kirby v. Planning Board of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)).
Appeals to a town's Board of Appeal or Zoning Board for review of a Planning Board decision are brought pursuant to G.L. § 45-23-70. The Board of Appeal is precluded from substituting its own judgment for that of the Planning Board and must consider the issues upon the findings and record of the Planning Board. G.L. § 45-23-70(a). "The [B]oard of [A]ppeal shall not reverse a decision of the [P]lanning [B]oard or administrative officer except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record." Id.
 Standing of the Town to Appeal the Zoning Board
At the onset, this Court must determine whether the Town of Lincoln does have standing to appeal the decision of its own Zoning Board. According to G.L. 1956 § 45-23-71(a) (formally G.L. § 45-23-20), only an aggrieved person or persons may appeal a decision of the Zoning Board to the Superior Court. Traditionally, the Rhode Island Supreme Court has maintained that a town is not an aggrieved party with standing to appeal a Zoning Board decision. See Hassell v. Zoning Bd. of Review of East Providence, 108 R.I. 349, 275 A.2d 646 (1971); Town of East Greenwich v. Day, 119 R.I. 1, 375 A.2d 953 (1977); Apostolou v. Genovesi, 120 R.I. 501, 388 A.2d 821 (1978). However, in one instance, our Supreme Court ruled that a city or town is an "aggrieved" party when the Zoning Board decision is a real threat to the public interest. See City of East Providence v. Shell Oil Co., 110 R.I. 138, 290 A.2d 915
(1972).
In City of East Providence v. Shell Oil Co., the Rhode Island Supreme Court determined that the city solicitor, in the name of the City, was an aggrieved person to appeal from a decision of the East Providence Zoning Board. The Court stated that "`aggrievement' in the public sense occurs whenever there is a threat to the very real and legitimate interest which the general public has in the presentation and maintenance of the integrity of the zoning laws." Id. at 140, 290 A.2d at 918. In that case, the Zoning Board granted a special exception permitting a service station to be erected within two hundred feet of a church and cemetery less than a year after that same Zoning Board (without any intervening changes in circumstance) was overturned by the Supreme Court for granting the same applicants (or their predecessers) a special exception for the same uses on the same tract of land. Id. at 140, 290 A.2d at 916. The Court determined that these acts of the East Providence Zoning Board were "in complete disregard of the pertinent provisions of the zoning ordinance . . . in direct contravention of . . . the zoning ordinance as that ordinance had been construed by [our Supreme Court], and that . . . the board deliberately flaunted the authority of [the Rhode Island Supreme] Court." Id. at 140, 290 A.2d at 916.
In the instant matter, the Town asserts standing based upon its ongoing concern with Carvalho's proposed sewer construction plans. It maintains that if Carvalho is permitted to progress with his subdivision sewer construction plan, one of the Town's sewer pump stations would be excessively burdened, thereby jeopardizing the health, safety, and general welfare of a significant portion of the community.
This Court finds that the Town has misapplied the holding in City of East Providence v. Shell Oil Co., supra. to the circumstances of this case. Our Supreme Court in that case was primarily concerned with preserving the integrity of its own previous mandate which was "deliberately flaunted" by the Zoning Board and with preserving the integrity of the zoning laws which were "complete[ly] disregard[ed]" by the Zoning Board. Here, the Town utilizes one of the issues vigorously debated between the Planning Board and the applicant to assert public aggrievement. Although, this Court agrees that the sewer proposal needs to be reconsidered, its impact upon the public does not meet the grave public interest standard necessary to give standing to the Town to appeal its own Zoning Board's determination. Therefore, the Town lacks necessary standing in that it is not an "aggrieved person" as required by G.L.§ 42-35-16. Thus, this Court need not address the merits of the Town's abandonment argument. Accordingly the February 6, 2001, Decision of the Zoning Board, which permits Carvalho to proceed with his application under the 1986 regulations, stands.
 Carvalho's Request for Declaratory Relief
Before the Zoning Board rendered its February 6, 2001, decision reversing the Planning Board, Carvalho filed an action with this Court seeking declaratory and injunctive relief that he is entitled to proceed with his subdivision under the 1986 regulations. In light of the Zoning Board's decision that Carvalho may proceed under these regulations, this action has become moot. The only remaining issue before this Court is whether Carvalho is entitled to mandamus requiring the Planning Board to schedule the plaintiff for final subdivision approval at the next Planning Board meeting.
Our Supreme Court has determined that mandamus is "an extraordinary remedy that should issue only when the plaintiff has a clear legal right to the performance of the requested act and when the defendant has a ministerial legal duty to perform such act without the exercise of either legislative or judicial discretion." D'Amico v. Providence City Council,654 A.2d 307, (R.I. 1995) (citing Buckley v. Affleck, 493 A.2d 828 (R.I. 1985); Warwick School Committee v. Gibbons, 122 R.I. 670, 410 A.2d 1354
(1980)). This Court finds that the issuance of subdivision approval is discretionary and that there are several issues that need to be resolved between the parties before the project proceeds to final subdivision approval. The parties must agree upon a mutually feasible sewer system proposal and road length. Accordingly, mandamus is denied and this matter is remanded to the Planning Board for further proceedings before final subdivision approval is granted under the 1986 regulations.
Counsel shall confer and agree upon an appropriate form of order and judgment, reflective of this Court's decision, and submit it to the Court forthwith for entry.
[1] Although a stenographic record is not available for all meetings before the Lincoln Planning Board, a capsule summary was provided as part of the record.
[2] After the April 22, 1998 hearing, Carvalho's (then) attorney wrote to the Chairman of the Planning Board stating in his letter that the Planning Board's "decision" [quotation marks in the original] was an approval and will be taken as such unless the Planning Board responds to the contrary. (Town's Exhibit D.) The letter additionally states that Carvalho ". . . will not be scheduled for a further Planning Board meeting until [he] take[s] the initiative in either accepting or rejecting the proposed modifications and schedule[s] the appropriate meeting thereafter."
As the travel of this matter progressed, the Planning Board requested the Assistant Town Solicitor for the Town of Lincoln to render a legal opinion regarding the status of the subdivision application. In recounting the outcome of the April 22, 1998 meeting, the Solicitor states in his opinion:
"On the April 22nd meeting, Carvalho's plan was not accepted as presented. Modifications were requested by the board relative to (1) the proposed sewage disposal system, (b) the storm drainage design, and (c) the issue of open space dedication or the payment of a fee by the developer in lieu of a dedication. The question of acceptance was not voted upon." (Emphasis added.)
[3] The subject section of the Subdivision Ordinance provides:
 "The Planning Board will return one (1) copy of the preliminary plat to the subdivider with the statement of approval, approval subject to modification and the required modification, or disapproval and the reasons for disapproval noted on the plan within forty-five (45) days of receipt."
[4] The proposed zoning change was from the existing RS-20 zone to a less restrictive RG-7 zone which provisionally permits such a facility subject to the issuance of a Special Use Permit.
[5] The December 1995 regulations require in part: sidewalks in the subdivision (with a potential cost of $42,000. for two sides); granite as opposed to previously allowed concrete curbing (with a potential increase in cost of at least $16, 000.); underground utilities as opposed to previously allowed overhead utilities (with a potential increase in cost of at least $50,000.); land dedication or payments in lieu of dedication (with a potential cost of $3,500. per lot at $73,500. minimum). Additionally, Post Guarantee Bonds and Completion Maintenance and Remediation Bonds are required under the new regulations where Performance Bonds were previously required under the 1986 regulations.
[6] The actual decision that Carvalho appealed from was not formally voted upon until January 24, 2001, despite having filed said appeal in November 2000. At the time of his appeal, it was unclear what Planning Board Decision, if any, Carvalho was appealing. In fact, Carvalho does not provide a date, as required on the Appeal Form, of when the issue being appealed was decided by the Planning Board. On December 12, 2000, the Zoning Board required that the Planning Board formally vote on Carvalho's subdivision issues and report its vote back to them.